UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )   No. 4:22-CR-00705-AGF-SPM
                                     )
CHARLES CARBON III,                  )
                                     )
        Defendant.                   )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Charles Carbon III, represented by defense counsel Abraham Copi, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II, the United States agrees that no further federal prosecution will be brought in this District relative to the events described in the information, of which the Government is aware at this time. The United States further agrees to dismiss Count III at the time of sentencing.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

3. **ELEMENTS:**

As to **Count I**, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed a scheme to obtain any of the moneys under the custody and control of a financial institution by means of materially false or fraudulent representations;

*Two*, the defendant did so with intent to defraud; and

*Three*, the financial institution was insured by the Federal Deposit Insurance Corporation.

As to **Count II**, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily and intentionally devised a scheme to defraud another out of money, by means of material false representations or promises,

*Two*, the defendant did so with the intent to defraud;

*Three*, the defendant used, or caused to be used, an interstate wire communication, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. Following the onset of the COVID-19 pandemic and the subsequent recession, the President declared an emergency under the Stafford Act on March 13, 2020.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic, a presidentially declared national emergency. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program. The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications to obtain

3

the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for PPP loans are required to submit documentation supporting their payroll expenses.

The offense herein involved fraud in connection with an emergency declaration, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, as otherwise described in 18 U.S.C. § 1040.

The SBA also provided COVID-19 Economic Injury Disaster Loans ("EIDL"), pursuant to the CARES Act which allowed for the SBA to offer the EIDL funding to business owners negatively affected by the COVID-19 pandemic. EIDL applications are submitted via the SBA online portal. Applicants submit their personal and business information in support of each EIDL application, including the size of the affected business, the ownership of the business, number of employees for the business, and gross business revenues realized in the 12 months prior to COVID-19 impact on the national economy.  In addition to EIDL funding, applicants could also request and receive up to $10,000.00 in an EIDL Cash Advance Grant, based on the number of employees claimed. That grant was not required to be repaid. EIDL applications included a paragraph wherein the applicant affirmed that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

The servers receiving the EIDL applications via the SBA online portal are located in Virginia, Iowa, and Washington.

4

PNC Bank and Cross River Bank, with branches located in St. Louis, Missouri, are a financial institutions within the meaning of Title 18, United States Code, Section 20, the deposits of which are insured by the Federal Deposit Insurance Corporation.

Defendant Charles Carbon III ("Carbon") is a resident of St. Louis, Missouri, in the Eastern District of Missouri. Carbon maintained an account ending in x7464 with PNC bank. Carbon also maintained an account ending in x1153 with Regions Bank.

Cross River Bank is based out of Fort Lee, New Jersey, and acted as a participating lender in the PPP program, and in that capacity, accepted and processed PPP loan applications. Deposits and transfers from Cross River Bank to Carbon's account with PNC were completed by means of interstate wire transmission. Transactions between the SBA and PNC Bank were also completed by means of interstate wire transmission. Transactions between MODES and PNC Bank were also completed by means of interstate wire transmission.

On or about August 6, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant Carbon devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of Cross River Bank, a financial institution, by means of false and fraudulent pretenses, representations, and promises. As part of the scheme to defraud, Carbon applied for a PPP loan at Cross Rivers Bank with the intent to fraudulently obtain loan proceeds. Carbon falsely represented in the PPP loan application that his average monthly payroll was $7,520, that his business was in transportation and warehousing, and that the purpose of the funds was for payroll, lease and mortgage interest. Carbon further falsely represented in the PPP loan application that he had 6 employees and that his business's gross receipts and sales in 2019 were

5

$81,300.  Cross River Bank relied on the truthfulness of the defendant's representations in reaching its decision to issue the loan.  Once Carbon received the distribution of funds, he used them on personal purchases, rather than being used for the purposes of the PPP loan program.

On or about August 6, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant, executed and attempted to execute the scheme and artifice set forth above, to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Customers Bank, which was a financial institution as defined in Title 18, United States Code, Section 20, by means of material false and fraudulent pretenses, representations, and promises, in that Carbon submitted a false and fraudulent PPP loan application # 4584408200 to Cross River Bank for the purpose of obtaining money, funds, credits, assets, securities, and other property owned by, and under the custody and control of Cross River Bank, and later received $18,800.00.

On or about June 26, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant, devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of SBA, by means of materially false and fraudulent pretenses, representations, and promises.  Carbon applied for an EIDL loan with the intent to fraudulently obtain loan proceeds.  Carbon falsely represented in the EIDL loan application that his average monthly payroll was $7,698.33 and that his number of employees was 10.  Carbon further falsely represented in the EIDL loan application that his gross revenues for 2019 was $92,380, that his industry was agriculture, and his ownership start date was March 11, 2018.  Carbon further falsely represented in the EIDL loan application that he did not receive any other compensation from other sources.  SBA relied on the truthfulness of the defendant's representations in reaching its decision to issue the loan.

6

On or about June 26, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, Carbon, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds of SBA Loan # 3306734974 submitted to obtain funds from SBA to his account with PNC ending in x7476, for which he received $10,000.

The Social Security Act of 1935 initiated the Unemployment Insurance ("UI") system, which is operated and managed by each state at the direction of the U.S. Department of Labor ("DOL"). In the majority of states, benefit funding is based solely on a tax imposed on employers. However, DOL funds administrative costs associated with each state's UI program. The UI system is designed to provide benefits to persons who are out of work due to no fault of their own, and who meet other eligibility requirements of the state program. A beneficiary's eligibility for UI, the amount of UI benefits for which they are eligible, as well as the length of time benefits are available are determined by each state's laws. In all states, individual claimants must be eligible for employment and actively searching for employment while receiving UI benefits. A claimant receives UI benefits by completing an application at a local "one-stop center," by telephone, or online at each state's website. A claimant must provide the claimant's name, date of birth, social security number, home address, and other personal information. On a weekly or bi-weekly basis, the claimant then files for weekly payment benefits by certifying that the claimant is unemployed, eligible for benefits, and is seeking employment.

The state agencies authorize their financial services sections to release UI funds in the form of either: (a) a state contracted debit card mailed to the applicant; (b) a direct deposit into a pre-paid debit card account; (c) a direct deposit into the claimant's designated bank account; (d)

or in rare cases, some states will issue a check, if requested. Direct deposits of UI funds were completed through the automated clearing house ("ACH"), an electronic funds-transfer system that facilitates payments within the United States.  From time to time, the UI deposits may be coded with identifiers showing the state of the UI claim's origin or the name of the individual associated with the UI claim whose identity is used to make the claims.  Those direct deposits are made by means of interstate wire transmission to the bank account of the payment recipient. Section 2104 of CARES Act, entitled "Emergency Increase in Unemployment Compensation Benefits," provided for an additional $300 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other UI benefits under state law.

Carbon had bank accounts ending in x7464 and x1153 with Regions Bank.  Carbon, while receiving PPP funds, indicated to MODES that he had not received any PPP funds and was presently unemployed.  In a weekly request for information, Carbon misrepresented to MODES that he did not receive any PPP or disaster pay, including August of 2020, when on or about June 30, 2020, he had received $10,000 in EIDL loan proceeds, and on or about August 10, 2020 when he received $18,800 in PPP loan proceeds.  Carbon further misrepresented that he had been a self-employed event planner, and misrepresented that he did not work from March of 2020 through August of 2020, when in truth and fact, Carbon had worked at 48forty Solutions during March of 2020.  As a result of Carbon's misrepresentations in his application for UI benefits, between March of 2020 and August of 2021, UI benefits were transferred to Carbon's PNC account ending in x7464 totaling approximately $14,174.80.  In furtherance of the scheme to defraud, on or about the following dates, Carbon caused an interstate wire transfer to occur,

wherein funds from MODES were sent to his bank account with PNC Bank account ending in #7464 on September 9, 2020, for $14,174.80 and October 28, 2020, for $160. Defendant was not authorized to receive those deposits into his own accounts due to the fraudulent representations made in the UI application communications to MODES.

In addition to the charged conduct, pursuant to section 1B1.3 for relevant conduct, defendant agrees that, during the same time period, he committed additional fraudulent activity when he utilized unauthorized, forged checks against victims:

G.D. with account # ending in x5149 with First Bank for $4,816.82;

E.P. with account # ending in x5766 with PNC Bank for $3,806.21;

M.K. with account # ending in x0600 with St. Louis Bank for $850; and

Habitat for Humanity with account # x3010 with Royal Banks of Missouri for $2,850.

## 5. STATUTORY PENALTIES:

As to **Count I**, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

As to **Count II**, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES:  2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 6 levels should be added pursuant to Section 2B1.1(b)(1)(D) because the loss exceeds $40,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a). The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

10

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 13.

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this

agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

12

c. **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:**   The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, **restitution of $55,457.83** (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including

13

all relevant conduct loss.   The defendant agrees to provide full restitution to all victims of all charges in the indictment.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

15

12/31/2004  23:12     3143817461                    CARBON HOME FAX                         PAGE  01

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_____
Date

GWENDOLYN CARROLL   Digitally signed by GWENDOLYN CARROLL
                    Date: 2023.07.20
                    14:38:41 -05'00'
_____
EDWARD L. DOWD III
Assistant United States Attorney

6/18/23
_____
Date

_____
CHARLES CARBON III
Defendant

6/20/23
_____
Date

_____
ABRAHAM COPI
Attorney for Defendant

16